UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SEVEN ADAM LAROUE,

                Petitioner,

v.

NOAH NAGY,

                Respondent.

_____/

Case No. 1:20-cv-1171

Honorable Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Seven Adam LaRoue is incarcerated with the Michigan Department of Corrections at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan.  On March 20, 2019, Petitioner pleaded *nolo contendere* in the Newaygo County Circuit Court to first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a.  On May 21, 2019, pursuant to a *Cobbs* agreement, the court sentenced Petitioner to a prison term of 6 years, 6 months to 40 years.

On November 22, 2020, Petitioner filed his habeas corpus petition raising one ground for relief:  "Constitutional fair and speedy trial 180 day violations."  (Pet., ECF No. 1, PageID.6.)  Respondent has filed an answer to the petition (ECF No. 4) stating that the petition should be denied because part of Petitioner's claim is based on state law violations and, therefore, is not cognizable on habeas review, and the rest of Petitioner's claim—the part that is premised on a federal constitutional violation—lacks merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA),

I find that Petitioner's federal constitutional claim is meritless and those parts of his claim that depend on state law are non-cognizable.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

**I.   Factual allegations**

At Petitioner's preliminary examination, his mother testified that Petitioner showed up at her house in Newaygo County at about 3:00 a.m. on June 3, 2017.  (Prelim. Exam. Tr., ECF No. 5-2, PageID.129.)  She told him through the window to go home; Petitioner did not live with his mother.  (*Id*., PageID.131–132.)  Petitioner instead burst through the door and wrapped his hands around her throat.  (*Id*.)  She lost consciousness.  (*Id*.)  When she woke up, she had a gash on her head and had several bruises.  (*Id*., PageID.132–133.)  She tried to use the telephone to call the police, but Petitioner would not let her.  (*Id*., PageID.136.)  She drove Petitioner to his house.  (*Id*., PageID.136–138.)  Then she returned home and called the police.  (*Id*., PageID.138.)

The court bound Petitioner over on charges of first-degree home invasion; domestic violence, third offense; and assault with intent to do great bodily harm less than murder.  The court also concluded that there was factual support for a habitual offender-fourth offense enhancement.

Petitioner was released on bond.   About a month after the preliminary examination, Petitioner committed additional crimes in neighboring Oceana County.  The facts relating to those offenses were set out by the Michigan Court of Appeals as follows:

> In the early morning hours of July 28, 2017, three Oceana County police deputies were called to investigate a suspected break-in at a home in Hesperia, Michigan. The homeowners identified defendant—who was the homeowners' neighbor—as the person who broke their bedroom window.  The officers drove down the street to defendant's home to speak with him.  The officers parked their marked patrol cars at the end of defendant's driveway roughly 30 to 40 yards from defendant's home.  Each officer was dressed in uniform with identifying patches and badges, and was carrying a duty belt with a gun, taser, and other various items attached. After approaching defendant's home, the officers declared their presence by saying "sheriff's office" loudly, announcing themselves individually, and asking defendant to come out and speak to them.  Defendant acknowledged the officers

2

and said that he was coming outside.  But instead, defendant exited the home through a back window and fled from the officers on foot.  Defendant jumped into a swampy pond at the back of his property, and two officers followed him in. Defendant actively resisted arrest and did not comply with the officers' requests for him to stop fighting.  Eventually, the two officers were able to forcibly remove defendant from the pond and arrest him.

*People v. LaRoue*, No. 343149, 2019 WL 2111565, at *1 (Mich. Ct. App. May 14, 2019).

Following a two-day jury trial in the Oceana County Circuit Court, on December 21, 2017,

Petitioner was convicted of two counts of resisting a police officer and one count of destruction of

a building.  The court sentenced Petitioner on March 26, 2018.

The day before his Oceana County Circuit Court trial commenced, Petitioner's counsel

argued a motion alleging a speedy trial violation in the Newaygo County case.  During argument

on the motion, Petitioner's counsel acknowledged that there had been delays in the case because

of a request for a forensic examination by Petitioner's previous counsel.  (Hr'g Tr., ECF No. 5-5,

PageID.177–178.)  The prosecutor provided a more detailed accounting of the time that had passed

since Petitioner's arrest.  The prosecutor argued that Petitioner delayed the case by asking for a

personal recognizance bond, by requiring an adjournment to permit him to deal with the Oceana

County case, and then by the request for a competency examination.  (*Id.*, PageID.178–179.)  It is

also apparent that there may have been delay involved in the substitution of Petitioner's second

counsel for his first counsel.

The trial court denied the motion.  The court did not delve into the constitutional

requirement of a speedy trial; rather, he focused on the state rules put in place to ensure that the

constitutional requirement was met.  The judge noted that trial was set for the following month

and that, excluding all of the delays occasioned by Petitioner, there was no speedy trial problem.

The Oceana County trial proceeded.  At some point thereafter, Petitioner indicated to

counsel that he wanted to pursue an insanity defense.  (Mot. Hr'g Tr., ECF No. 5-6, PageID.186–

187.)  By the time Petitioner appeared for a hearing on the request, however, he had changed his mind again.  Petitioner had also asked the court to allow Petitioner to represent himself.  Because Petitioner claimed that he had not received his medications in days, the court was not willing to permit him to waive his right to counsel, but the court offered the Petitioner another opportunity to seek that relief after he was "re-medicated."  (*Id.*, PageID.190–191.)

Three days later, on the date scheduled for trial, Petitioner's counsel requested an adjournment because of concerns regarding Petitioner's competency.  Counsel again moved for a referral to determine Petitioner's competency and criminal responsibility.  (Hr'g Tr., ECF No. 5-7, PageID.199–200.)  Petitioner voiced his opposition, but the court ordered the referral anyway.

The competency report was prepared, and the court held a competency hearing on April 17, 2018.  (Hr'g Tr., ECF No. 5-8.)  Based on the report, the court determined that Petitioner was competent to stand trial.  Petitioner's counsel, however, sought an independent forensic evaluation regarding criminal responsibility.  (*Id.*, PageID.214.)  The court noted that accommodating that request would take some time.  At the next conference, the court noted that Petitioner's counsel had recently filed additional motions that would require response and consideration.  (Pretrial Conf. Tr., ECF No. 5-9.)

At the next conference, Petitioner's counsel reported that she had identified the independent expert who would be available for the examination two months thereafter.  (Mot. Hr'g Tr., ECF No. 5-10, PageID.237–238.)  Counsel acknowledged that, for speedy trial purposes, the delay would be attributable to Petitioner.  (*Id.*, PageID.238–239.)  At the hearing, Petitioner reiterated his request to represent himself and his request for bond.

The court heard Petitioner's bond request again on September 18, 2018.  (Mot. Hr'g Tr., ECF No. 5-12.)  The court denied Petitioner's motion for bond.  Counsel reported that she expected

the new criminal responsibility evaluation to be complete within a couple of weeks.  (*Id.*, PageID.264.)  A month later, the evaluation was reported still to be a week away.  (Pretrial Conf. Tr., ECF No. 5-13, PageID.268.)  The court was reluctant to put off scheduling the trial any longer. The next available dates were during March of 2019.

On March 20, 2019, with 75 jurors in waiting, Petitioner entered his plea.  Even getting dressed for trial and consideration of the plea offer were drawn-out affairs.  After keeping the prospective jurors waiting for an extended period, Petitioner was not willing to accept the offer. The court proceeded with jury selection.  The jury was picked, but not sworn, and then Petitioner decided to take the plea.  The plea was conditioned on Petitioner's right to appeal the "speedy trial" issue and an issue regarding amendment of the information to include a habitual offender enhancement that required a 25-year mandatory minimum sentence if he were convicted of certain offenses.

Petitioner, with the assistance of counsel, sought leave to appeal to the Michigan Court of Appeals raising only the speedy trial issue.  (Pet'r's Appl. for Leave to Appeal, ECF No. 5-17, PageID.389.)  By order entered January 8, 2020, the court of appeals denied leave "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 5-17, PageID.387.)  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 5-18, PageID.563–564.)  Petitioner raised the speedy trial issues as well as a new "ineffective assistance of counsel" claim.  (*Id.*)  By order entered July 28, 2020, the supreme court denied leave to appeal.  (Mich. Order, ECF No. 5-18, PageID.561.)  This timely petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).

5

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

6

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was

required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Speedy trial

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial. . . "); the Michigan constitution, Mich. Const. 1963 art. 1, § 20 ("In every criminal prosecution, the accused shall have the right to a speedy . . . trial . . ."); state statute, Mich. Comp. Laws § 768.1 ("persons charged with crime are entitled to . . . a speedy trial"); and state court rule, Mich. Ct. R. 6.004 ("The defendant . . .[is] entitled to a speedy trial . . . . Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice."). The court rule provides that where a defendant has been incarcerated for a period of 180 days or more, he must be released on personal recognizance unless the court makes specific findings that require his continued incarceration. Mich. Ct. R. 6.004(C). The rule excludes from the 180-day period periods of delay that are attributable to the defendant. *Id*.

The part of Petitioner's claim that references failure to comply with the 180-day rule raises only a state-law claim. "[A] federal court may issue the writ to a state prisoner 'only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States.'"
*Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must
"state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S.
63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus
Cases).  The federal courts have no power to intervene on the basis of a perceived error of state
law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502
U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  In raising his claim, Petitioner at
least in part, invokes the protections of the state constitution, state statutes, and the state court
rules.  None of those claims is cognizable on habeas review.

Although Petitioner relies on the state-court protections afforded to speedy trial rights, that
right is also guaranteed by the federal constitution.  Under the federal constitution, the right to a
speedy trial attaches when the accused is arrested or formally accused, *see United States v. Marion*,
404 U.S. 307, 320–21 (1971), and terminates upon conviction, *Betterman v. Montana*, 578 U.S.
437, 136 S. Ct. 1609, 1612 (2016).

The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-
trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that
evidence will be lost or memories diminished.  *Doggett v. United States*, 505 U.S. 647, 654 (1992);
*United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1,
7–8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *United States v. Marion*, 404 U.S.
307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966).  The sole remedy for a violation
of the speedy-trial right is dismissal of the charges.  *See Strunk v. United States*, 412 U.S. 434,
439–40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

Petitioner was arrested during June of 2017. His trial commenced and he entered his plea on March 20, 2019. The delay between Petitioner's arrest and his trial was approximately 21 months. "[A] delay is presumptively prejudicial when it approaches one year." *United States v. Gardner*, 488 F. 3d 700, 719 (6th Cir. 2007). Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors. *Doggett*, 505 U.S. at 651-652. Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). The Sixth Circuit specifically found a nine-month delay was not presumptively prejudicial when the case involved multiple defendants; and "if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Gardner*, 488 F.3d at 719. The delay here was significant. That factor certainly weighs in Petitioner's favor.

Petitioner's case was initially set for trial during January of 2018. (Newaygo Cnty. Cir. Ct. Register of Actions, ECF No. 5-1, PageID.116.) It was delayed until that date by an earlier effort, commenced by Petitioner's counsel, to determine Petitioner's competency and criminal responsibility. It was also delayed because Petitioner was not happy about that attempt, so he replaced his counsel. By the time those matters were resolved, Petitioner's trial in Oceana County was scheduled to proceed first.

The procedural progress after that first scheduled trial is described above. Petitioner's ever-shifting position regarding his competence, his criminal responsibility, or both, stymied any

attempt at a speedy trial thereafter.  Eventually, the court could wait no longer to schedule the trial.
Even then, at the time the court's patience had run out, Petitioner still did not have the independent
criminal responsibility report in hand.  The court scheduled the trial, but docket congestion pushed
that date to March of 2019.

The undersigned concludes that Petitioner caused almost every minute of the delay he
faced.  As the trial was pushed later and later by Petitioner's shifting requests, the prosecutor often
reminded the court that the prosecutor was ready to proceed as of the first scheduled trial date and
had remained ready thereafter.  Petitioner does not identify any meaningful delay that can be
attributed to the prosecution.  This factor weighs heavily against Petitioner.

Petitioner repeatedly complained that his speedy trial rights had been compromised.  He
raised the issue by motion before the first trial date and continued to point out the issue at
subsequent hearings and conferences.  Nonetheless, when the court reminded Petitioner and his
counsel that meeting their requests for evaluations of competence or criminal responsibility would
necessarily delay matters, they acquiesced every time.  This factor does not tip the scales
significantly either way.

With respect to the three specific categories of harm that might accrue to a pretrial detainee
because of undue delay in proceeding with trial: "(i) . . . oppressive pretrial incarceration; (ii) . . .
anxiety and concern of the accused; and (iii) . . . the defense [could] be impaired[,]"  *Barker*, 407
U.S. at 532 (footnote omitted), Petitioner has not identified any particular prejudice—other than
the obvious prejudice of being in jail while charges were pending.  Even that prejudice, however,
was mitigated by the fact that, for a significant portion of the delay, Petitioner was not incarcerated
just because he was awaiting trial.  Instead, he was serving the sentence for his Oceana County
conviction.  Under the circumstances presented here, Petitioner's stay in detention did not amount

to "oppressive pretrial incarceration."  Moreover, there is no suggestion that Petitioner suffered undue anxiety or concern or that his defense was impaired by the delay.

If I were weighing the *Barker* factors, I would conclude that Petitioner's pretrial detention did not violate his speedy trial rights.  But that is not the standard.  Instead, the question is whether Petitioner has *shown* that the court of appeals' conclusion that the speedy trial claim was without merit is contrary to, or an unreasonable application of, clearly established federal law.  In that regard, the fact that the state court was called upon to weigh competing factors to reach a result is significant.  "Applying a general standard to a specific case can demand a substantial element of judgment[; t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.

The Supreme Court has acknowledged that the *Barker* analysis is a "balancing inquiry" which requires "a weighing of four factors."  *United States v. Eight Thousand Eight Hundred and Fifty Dollars in U.S. Currency*, 461 U.S. 555, 564 (1983).  The factors are nothing more than "guides"; "none of [them] is a necessary or sufficient condition for finding unreasonable delay."  *Id*. at 565.  The *Barker* approach "'necessarily compels courts to approach speedy trial cases on an *ad hoc* basis[.]'"  *Id*. at 564.  *Barker* calls for a "case-by-case" determination.  *Solem v. Helm*, 463 U.S. 277, 294 (1983).  Thus, the state court had significant leeway in how it weighed the factors.

While the state court's decision was summary, and although Petitioner asks this court to weigh the factors to come to a different conclusion, he has not shown how the state court's resolution is contrary to, or an unreasonable application of, *Barker*.  Indeed, this Court would come to the same conclusion.  Accordingly, he is not entitled to habeas relief.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's arguments under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

13

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:   September 23, 2021                    /s/ Sally J. Berens
                                               SALLY J. BERENS
                                               United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

14